# BORRELLI & ASSOCIATES
### P.L.L.C.
www.employmentlawyernewyork.com

| 655 Third Avenue | 1010 Northern Boulevard |
|---|---|
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

June 20, 2017

_Via Electronic Case Filing_
The Honorable Peggy Kuo
United States Magistrate Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   _Schieler v. Skanska U.S.A. Civil Inc., et al.,_ No. 16-cv-5370 (PK)

Dear Judge Kuo:

This office represents the Plaintiff, Erika Schieler (hereinafter "Plaintiff"), in the above-referenced single-plaintiff matter in which she brings claims against Skanska U.S.A. Civil Inc. and Michael Di Paolo, (collectively as "Defendants"), (together with Plaintiff as "the Parties"), for Defendants' alleged violations of, _inter alia_, the overtime and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA").   On April 11, 2017, the Parties attended a settlement conference before Your Honor.  Shortly thereafter, following this Court's efforts at the conference, the Parties reached a settlement in principle, which the Parties have now reduced to a formal written agreement.   The Parties' Settlement Agreement ("Agreement") is attached hereto as **Exhibit A**.[1]  We write now to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of that agreement, in accordance with _Cheeks v. Freeport Pancake House, Inc._, 796 F.3d 199 (2d Cir. 2015).[2]

---

[1] The final unexecuted agreement is attached as Exhibit A.  The Parties will submit a fully executed agreement before the end of this week.

[2] Plaintiff also brings claims for Defendants' alleged violations of numerous provisions of the New York Labor Law, which do not require court approval.

## I.    Terms of the FLSA Settlement

Following the settlement conference on April 11, 2017, the Parties reached an agreement to settle all claims relating to the Plaintiff's employment with the Defendants for $19,500.00 (hereinafter the "Settlement Sum"), with Plaintiff's counsel receiving one-third of the Settlement Sum (i.e., $6,500.00) as attorneys' fees, and $416.24 for their out-of-pocket litigation costs. The remaining $12,583.76 will be remitted to Plaintiff. Plaintiff, jointly on behalf of the Parties, respectfully submits that this amount and allocation is fair and reasonable under the circumstances for the reasons detailed below.

## II.    Allegations Supporting the Proposed Settlement Terms

### (A)    Overtime Claims

Defendants are a construction company and its senior vice president and general counsel. Plaintiff worked for Defendants as a paralegal from July 4, 2004 until July 25, 2016. Plaintiff commenced this action on September 27, 2016. Thus, the applicable FLSA limitations period in this matter is from September 28, 2013 through September 27, 2016. Throughout her employment, and specifically over the course of the relevant FLSA period, Plaintiff alleges that she worked between 41 and 42.75 hours per week. Despite working these hours each week, Plaintiff claims that, among other things, Defendants failed to keep accurate, contemporaneous records of her hours worked and did not pay her overtime compensation for hours worked in excess of forty each week. Were the trier of fact to credit Plaintiff's allegations, Plaintiff's maximum recovery for her FLSA overtime claims is approximately $18,401.67, with this having the potential to be doubled for liquidated damages.

Defendants contend, in sharp contrast, that Plaintiff did not work overtime, and that Plaintiff was paid for all hours worked at the correct rates of pay. In support, Defendants presented a sworn statement from one of Plaintiff's former colleagues stating that not only did Plaintiff *not* work overtime, but Plaintiff actually frequently took extended lunch breaks at the company gym, and would regularly conduct non-work-related tasks during the work day, essentially minimizing her actual working time. According to Defendants' view, Plaintiff would thus not be entitled to overtime pay because she did not work in excess of forty hours per week. More so, even if Plaintiff were to prevail on any owed overtime, Defendants deny that any violation was willful, and that they took reasonable steps to comply with the FLSA in good faith, resulting in a two-year statute of limitations and no liquidated damages. Were Plaintiff not able to prove willfulness, her maximum FLSA overtime damages, running from September 28, 2014 through April 1, 2016, would be $13,402.58.

(B)    *Retaliation Claims*

Plaintiff also alleges that - - after sending a letter, through counsel, complaining about her unpaid overtime wages - - Defendants retaliated against her by unreasonably increasing her workload, changing her work schedule, and ultimately terminating her employment.

Defendants deny taking any retaliatory measures against Plaintiff for her complaint of unpaid overtime.  They contend, again sharply contradicting Plaintiff's allegations, that Plaintiff was placed on a performance improvement plan ("PIP") before Plaintiff raised any complaints relating to her overtime compensation, and have since produced the dated PIP.  Defendants argue that they later terminated Plaintiff's employment based on poor performance, which did not improve after they issued her that PIP.  According to Defendants' view, there was no retaliation taken against Plaintiff, thus Plaintiff would not be entitled to damages for retaliation.

## III.    **Reasonableness of Proposed Settlement Terms**

FLSA claims may be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted).  Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted).  In evaluating the fairness of a proposed settlement of FLSA claims, courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).  The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion.  For the reasons described below, based on the *Wolinsky* factors, the Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable.

(A)    *Range of Possible Recovery*

Regarding the first *Wolinsky* factor, the parties dispute the number of hours that Plaintiff worked.  Defendants argued that Plaintiff never worked any hours of overtime, and that any purported time worked beyond forty hours each week was at best *de minimis* and therefore not compensable.  Plaintiff alleged that she worked for approximately 41 hours each week until July 2014 and 42.75 hours each week thereafter until her termination.  With this position, Plaintiff's

maximum recoverable compensatory damages for owed overtime under the FLSA would amount to an estimated $18,401.67.[3]  The following chart explains this arithmetic:

| Start Date | End Date | Number of Weeks Where OT Worked | OT Rate | OT Hours Per Week | Owed OT |
|---|---|---|---|---|---|
| | | | | | |
| 9/27/2013 | 3/31/2014 | 12 | $59.50 | 1 | $710.40 |
| 4/1/2014 | 3/31/2015 | 52 | $60.95 | 2.75 | $8,715.85 |
| 4/1/2015 | 3/31/2016 | 52 | $62.74 | 2.75 | $8,971.82 |
| 4/1/2016 | 7/25/2016 | 0 | N/A | 0 | $0.00 |
| | | | | *Totals* | *$18,401.67* |

However, assuming *arguendo* that Your Honor were to accept Plaintiff's claims for hours worked but decline to find Defendants' actions in willful violation of the FLSA, Plaintiff's total recoverable compensatory damages for the last two years of allegedly owed overtime under the FLSA would be $13,426.53.  Thus, a realistic range of recovery for overtime in this matter was between $0.00 and $36,853.60 (if Plaintiff were to prove all of her overtime claims and obtain an award of liquidated damages).  Plaintiff is receiving approximately 93% of her actual damages on a two-year statute of limitations basis, and 69% of her actual damages on a three-year statute of limitations basis as a result of this settlement, after deducting attorneys' fees and costs, achieving a highly favorable outcome in light of the evidence thus-far adduced in this matter.[4]

   *(B)*     *Litigation Expenses, Burdens, and Risks*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, litigation expenses were prepared to substantially increase, with initial interrogatories and document responses to be exchanged immediately, followed by several depositions for Plaintiff, the named defendant, the testifying co-worker, and a corporate representative at a minimum. Dispositive motion practice on certain issues, and an eventual trial on bitterly contested factual issues, were sure to follow.  Perhaps more importantly, even if successful at trial, Plaintiff faced a difficult challenge in recovering a greater judgment than the Settlement Sum, given the substantial relief for Plaintiff's overtime claims received here and record evidence challenging Plaintiff's retaliation claim.  While Plaintiff contends that she is owed more than the Settlement Sum based

---

[3] Were this Court to look back beyond the FLSA's three-year statute of limitations to include the NYLL's longer six-year statute of limitations, Plaintiff's maximum recovery would be an estimated $20,237.18.

[4] Because Defendants produced Plaintiff's PIP, which displays that she was disciplined for performance issues before she alleges to have complained about her overtime pay, the success of Plaintiff's retaliation claims appears unlikely.

on her claim for liquidated damages, Plaintiff understands that if she were to continue with the litigation - - even if successful - - she may never receive any money. Indeed, courts have recognized that discovery and eventual trial practice may "meaningfully decrease possible recovery for plaintiffs." *Flores v. Mama Lombardi's of Holdbrook, Inc.*, 2015 WL 2374515, at \*5 (E.D.N.Y. May 18, 2015). With litigation expenses only expected to rise for both Parties, and with the likelihood of collecting higher damages almost assuredly zero, the Settlement Sum is especially fair and reasonable under *Wolinsky*.

### (C)   Arm's-Length Bargaining

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the FLSA claims, the settlement negotiations took place over several weeks and concluded only after paper discovery had been exchanged and the Parties participated in a settlement conference that this Court supervised.

Further absent from this settlement are any factors that would militate against the Court approving the Agreement. Plaintiff's release is narrowly tailored, and serves to release only pre-existing wage and retaliation claims and therefore does not fall into the category of releases that are so broad as to run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at \*2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at \*6-7 (S.D.N.Y. Mar. 30, 2015). Finally, the Agreement does not contain a confidentiality clause that may "run afoul the purposes of the FLSA and the public's independent interest in assuring that employee's wages are fair." *Flood*, 2015 WL 4111668, at \*1 (citing *Lopez*, 2015 WL 1455689, at \*5). Again, in exchange for settling her FLSA claims, Plaintiff is not only receiving her allegedly owed overtime wages, but she is also avoiding further expenses and risks inherent in further pursuit of this litigation.

### (D)   Plaintiff's Attorneys' Fees are Reasonable

With respect to the legal fees, Plaintiff's attorneys' fees of $6,500.00 are limited to one-third of the total settlement amount. Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See McDaniel v. City of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit"); *see also Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at \*4-5 (E.D.N.Y. Dec. 09, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at \*3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at \*3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at 33% of the settlement). With respect to costs, Plaintiff's counsel has incurred $416.24 in out-of-pocket expenses prosecuting this case, limited to the Court's filing fee,

medical records copying costs, and postage.  Plaintiff's itemized expense report is attached here as **Exhibit B**.

Should the Court wish to conduct a lodestar cross-check to ascertain the reasonableness of the fees requested, to date, Plaintiff's counsel have billed over 133 hours on this matter - - an adversarial litigated case wherein the parties: engaged in pre-litigation correspondence and negotiations; served discovery; prepared responses thereto; engaged in an exchange of documents; Plaintiff obtained and reviewed extensive medical records relating to Plaintiff's original claim for emotional harm;[5] and the Parties appeared before Your Honor for conferences and a several-hour Settlement Conference - - amounting to approximately $28,000.00 in fees if calculated pursuant to the lodestar.[6]  This figure is based on hourly rates of $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner, $350.00 per hour for Alexander T. Coleman, Esq., as partner, $250.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and lead associate on this matter, $150.00 per hour for Michael B. Engle, Esq., non-appearing junior associate who assisted undersigned counsel on this matter, and $125.00 per hour for paralegals and law clerks.  Courts routinely approve these rates.  *See Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *4 (PAE) (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75 per hour and $90 per hour for the Firm's paralegals); *Calderon v. Dynamic Corp. Holdings, Inc.*, No 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (same); *Rosario v. Valentine Ave. Discount Store. Co.*, No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals); *Cregg v. FirstService Residential New York, Inc.*, No. 15-cv-3876 (LB) (E.D.N.Y. Dec. 9, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for Firm's associates, and $75 per hour for the Firm's paralegals); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at *2 (S.D.N.Y. Apr. 30, 2015) (Freeman, *J.*) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the Firm's associates, and $75 per hour for the Firm's paralegals).

The fees requested represent merely 20% of the lodestar in this case, which falls well below what courts routinely approve as reasonable. *See, e.g., Lizondro-Garcia v. Kefi LLC*, 2015 WL 4006896, at *1-*5 (S.D.N.Y. 2015) (approving 1.68 lodestar multiplier); *Cuthbert v. New Soldier's*

---

[5] In light of those records, Plaintiff elected not to proceed with a claim for emotional damages in this matter.

[6] These figures are current as of June 8, 2017.  They do not include the time spent finalizing this motion or the Parties' settlement agreement.

*Rest., Inc.*, 2015 WL 1321676, at *2 (E.D.N.Y. Mar. 24, 2015) (approving 2.5 lodestar multiplier in default judgment fee award); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19-20 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *see also Wolinsky¸* 900 F. Supp. 2d at 336 (explaining that a court may adjust the fee upward or downward from the lodestar amount based on other considerations).[7]

## IV.   Conclusion

For the forgoing reasons, Plaintiff, on behalf of the Parties, respectfully requests that the Court approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, but retain jurisdiction to enforce the terms of the Parties' Agreement.

Respectfully submitted,

Michael R. Minkoff, Esq.
*For the Firm*

To: All Counsel via ECF

Enclosure

---

[7] Should the Court wish to review Plaintiff's counsel's contemporaneously-kept billing records, Plaintiff will submit them at the Court's instruction.  Again, as Plaintiff's attorneys' fees are well below the lodestar, we submit that the fees sought are presumptively fair and reasonable and.